IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| The National Bank of South Carolina, | ) | Civil Action No. 3:04-22447-10BC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Debra L. Julian; William F. Julian; | ) | |
| D. Scott Heineman and Kurt F. Johnson, | ) | |
| Trustees of the Julian Family Trust and | ) | **REPORT AND RECOMMENDATION** |
| American Express Travel Related Services, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This case is a real estate foreclosure action filed by the National Bank of South Carolina ("NBSC") in the Court of Common Pleas for Lexington County. The record shows that Debra L. Julian and William F. Julian (together "the Julians") executed a note and mortgage in favor of NBSC and gave as security their residential property in Lexington County, South Carolina. Upon default, NBSC filed a lis pendis and complaint naming as defendants the Julians, D. Scott Heineman and Kurt F. Johnson, Trustees of the Julian Family Trust ("the Trustees"), and American Express Travel Relates Services ("Am. Ex.").[1] The Trustees were served, but failed to file a timely answer. NBSC filed a motion for default as to the Trust in state court. The Julians, through their attorney Paul L. Erickson ("Erickson"), filed "Affirmative Defenses, Answer to Complaint and Counterclaim" which alleged numerous violations of federal law in connection with

---

[1] Am. Ex. is a judgment creditor and filed an answer to protect its interest. It has not taken a position with respect to the issues dealt with in this Report and Recommendation ("R&R").

the loan process.[2] Thereafter, NBSC removed the case to this court based on the federal questions raised by the Julians.

By Order filed contemporaneously herewith, the undersigned has denied the Julians' motions to file an amended answer and counterclaim, to stay the scheduling order, and to allow their counsel to withdraw. The Order also grants the motion of NBSC to strike pleadings filed pro se by the Trustees. Thus, the remaining motions to be addressed by this R&R are the motions of NBSC to strike the defenses and counterclaims asserted by the Julians and to hold the Trust in default.

## Facts

1. On April 15, 2002, the Julians executed a residential real estate mortgage and promissory note in favor of NBSC in the amount of $134,016 for their property located at 522 M Avenue, Cayce, South Carolina.

2. By Quit Claim deed dated April 5, 2004, the Julians conveyed their property to D. Scott Heineman ("Heineman") and Kurt F. Johnson ("Johnson") as Trustees of the Julian Family Trust. (Julians' Answer and Counterclaim, Ex. 2).

3. Kurt F. Johnson executed a "Subrogation Bond for Security Interest" in the amount of $268,032 (double the amount of the Julian's loan from NBSC). (NBSC's Memo in Support of Motion to Dismiss, Ex. F). By this instrument, Johnson appears to attempt to substitute himself for the Julians as being liable on the loan and to provide a bond to NBSC subject to the following:

---

[2]This pleading contains 202 paragraphs, plus a prayer for relief and attachments, and is 35 pages in length.

2

>       THE CONDITIONS PRECEDENT to the stipulation and bond for release of security interest is that if claimant NATIONAL BANK OF SOUTH CAROLINA CAMDEN, shall answer all the petitions within the PRIVATE ADMINISTRATIVE REMEDY DEMAND and receive a damage award, this bond shall remain in full force and effect. If claimant NATIONAL BANK OF SOUTH CAROLINA CAMDEN, fails to produce a valid claim under the terms hereof, together with the attached agreement, this bond shall be void for failure of specific performance.

4. On May 5, 2004, Johnson signed a satisfaction of the Julians' mortgage as "Attorney in Fact-Agent" of NBSC. Its satisfaction was recorded on May 11, 2004. (NBSC Mem. in Support of Motion to Dismiss, Ex. E).

5. Payments on the mortgage ceased and the loan went into default.

## Procedural History

1. NBSC filed its Lis Pendens and Foreclosure Complaint in the Court of Common Pleas for Lexington County on June 10, 2004. Defendants were the Julians, Heineman and Johnson as Trustees of the Julian Family Trust, and judgment creditor Am. Ex.

2. All defendants were served. Am. Ex. filed an answer. The Trust did not answer and an affidavit of default was filed on August 6, 2004.

3. The Julians filed an Answer and Counterclaims through counsel with asserted claims under various federal statutes including: The Real Estate Settlement Procedures Act, The Fair Debt Collection Practices Act, The Consumer Credit Protection Act, The Racketeer and Corrupt Organizations Act and, The Federal Truth in Lending Act.

4.  On October 4, 2004, NBSC removed the case to this court based on the federal questions asserted in the Julians' Answer and Counterclaims.

5.  On October 7, 2004, NBSC moved to strike the defenses and counterclaims raised by the Julians.

6.  The Julians filed an opposition memorandum on November 9, 2004, and an affidavit of Dr. Larry Bates on November 12, 2004.

7.  NBSC filed a reply memorandum on November 15, 2004.

8.  On December 30, 2004, Johnson and Heineman filed an answer to the foreclosure complaint and a motion to dismiss the complaint.

## Discussion

What began as a run of the mill state foreclosure case has been transformed into a federal quagmire based on the defenses and counterclaims raised by the Julians. The position of the Julians stems from "an elaborate Internet scam orchestrated by…Heineman and … Johnson." The Frances Kenny Family Trust v. World Savings Bank FSB, 2005 WL 106792, *1 (N.D.Cal. 2005).[3] In Kenny, Judge Alsup described the "scam" in some detail using information gleaned from the web site promoted by Heineman and Johnson and the cases before him.[4] According to Judge Alsup, Heineman and Johnson promoted a scheme which promised distressed homeowners that they could eliminate their mortgage and put cash in their pockets.

---

[3] At least 15 similar cases were filed in the Northern District of California.

[4] A copy of the Kenny case is attached hereto and incorporated herein by reference.

4

> "The main premise [of the scheme] is that no enforceable debt accrues from a lender that funds a loan through wire transfers rather than through hard cash. This is the so-called 'vapor money' theory." Id.

The court found the contentions raised on this theory to be frivolous and filed in bad faith. Id.

The Julians, through their attorney, have made similar allegations and argument as made by Heineman and Johnson in the Kenny case.[5] This is not by chance. Their attorney, Paul L. Erickson, has indicated that he had been working with the Trustees' "in house counsel" in developing defenses and counterclaims for his clients.[6] All the defenses and counterclaims raised by the Julians are based on the same "vapor money" theory which has been rejected by every court which has considered it. In addition to Kenny, see Rene v. Citibank, N.A., 32 F.Supp.2d 539 (E.D.N.Y. 1999); Thiel v. First Federal Savings and Loan Association of Marion, 646 F. Supp. 592 (N.D. Ind. 1985), dis. in part and aff'd. in part, 828 F.2d 21 (7th Cir. 1987) (Table); Nixon v. Individual Head of the St. Joseph Mortgage Co., 615 F. Supp. 898 (N.D. Ind. 1985), aff'd 792 F.2d 142 (7th Cir. 1986); and Strickland v. Mortgage Co. (In re Strickland), 179 F.R. 979 (Bankr. N.D. Ga. 1995). The Julians cite no authority for their position. (See Brief in Opposition to The National Bank of South Carolina's Motion to Strike Defenses and Dismiss Counterclaims). Instead, they rely on an affidavit of Dr. Larry Bates. Bates affidavit is an attempt to authenticate a three and a half hour, two volume video entitled "The Money Masters, How International

---

[5]Heineman and Johnson have attempted to continue the argument summarily rejected in the Northern District of California in this District.

[6]The undersigned assumes in house counsel is Thomas Spielbauer who represented Heineman and Johnson in the Kenny case.

5

Bankers Gained Control of America" which is attached as an exhibit to the affidavit.[7] While interesting, the video is inadmissible.

Further, even if admissible, the video does not support the Julians' contentions. As far as the undersigned can understand, the video is a history of world wide banking and an attack, *inter alia*, on the Federal Reserve System. The video calls for drastic monetary reform, specifically what is referred to as the "fractional reserve banking system." Apparently, the producers of the video wish to require banks to maintain a 100 percent reserve for all loans. The video calls for amending certain United States statutes and repealing others to "reform" our banking system. Nothing in the Bates' affidavit supports any of the Julians' defenses or counterclaims. The Julians have pointed to no facts which lead the undersigned to conclude that any federal statute has been violated. Erickson attempts to argue in his response to NBSC's motion to dismiss that the Julians' claims are based on the failure of NBSC to notify the Julians during the loan process that the fractional reserve system applied to their loan. However, the Julians cite no authority for any requirements that NBSC notify the Julians of its procedure which complied with current statutes and regulations.

Based on the foregoing, the undersigned recommends:

1.  The motion of NBSC to strike the defenses and counterclaims of the Julians be granted;

---

[7]The video appears to have been produced by an entity of like name, i.e., The Money Masters, which has a web address of www.themoneymasters.com and a toll free number 1-888-THE-PLOT.

2.    Consideration of imposition of Rule 11 sanctions against the Julians and their attorney; and

3.    The motion to place the Trust in default be granted.

>                          Respectfully submitted,
>
>                          s/Joseph R. McCrorey
>                          United States Magistrate Judge

March 25, 2005
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

## Notice of Right to File Objections to Magistrate Judge's Report and Recommendation
### &
### The Serious Consequences of a Failure to Do So

  The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be delivered to a United States District Judge fourteen (14) days after this Report and Recommendation is filed. Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

  During the ten-day period, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-47 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991). See also Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-19 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

See also Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd. Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections. See Wright, supra,; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing addressed as follows:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

Slip Copy                                                                                                           Page 1
2005 WL 106792 (N.D.Cal.)
(Cite as: 2005 WL 106792 (N.D.Cal.))

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court,
N.D. California.
THE FRANCES KENNY FAMILY TRUST; Scott
Heineman as Trustee; Kurt Johnson, as
Trustee; and Scott Heineman and Kurt Johnson as
Individual Assignees on Behalf
of Frances Kenny, Plaintiffs,
v.
WORLD SAVINGS BANK FSB; The Directors and
Officers of World Savings Bank FSB;
and Castle Capital Corporation, Defendants.
No. C 04-03724 WHA.

Jan. 19, 2005.
Thomas Spielbauer, The Spielbauer Law Firm, San Jose, CA, for Plaintiffs.

Walter J.R. Traver, Musick, Peeler & Garrett LLP, San Francisco, CA, for Defendants.

ORDER DENYING PLAINTIFFS' COUNSEL'S
MOTION TO WITHDRAW AS MOOT;
AWARDING
ATTORNEY'S FEES AND COSTS; AND
REFERRAL TO THE UNITED STATES
ATTORNEY AND THE
STATE BAR OF CALIFORNIA

ALSUP, J.

*1 AND RELATED ACTIONS.

INTRODUCTION
This "vapor money" case arises out of an elaborate Internet scam orchestrated by plaintiffs Scott Heineman and Kurt Johnson upon distressed homeowners on the verge of losing their homes. At least fifteen such cases were filed in this district. Nine cases were assigned to the undersigned. Each is frivolous and was filed in bad faith on the theory that no enforceable debt accrues from a lender that funds a loan through wire transfers rather than through hard cash. This alone would warrant an award of attorney's fees and costs. Disturbing allegations, however, have been made by defense counsel that, if true, suggest mail and wire fraud, as set forth below. This matter thus warrants the attention of the United States Attorney as well as the State Bar of California with respect to plaintiffs' counsel, Thomas Spielbauer.

STATEMENT
Plaintiffs Scott Heineman and Kurt Johnson use the Internet to advertise to distressed homeowners e.g., borrowers who are critically behind on their mortgage payments, that they have a way to "eliminate your mortgage." They advertise that "[t]here is now a PROVEN legal and moral way of eliminating your mortgage while adding $50K to your pocket." The main premise is that no enforceable debt accrues from a lender that funds a loan through wire transfers rather than through hard cash. This is the so-called "vapor money" theory. The way in which Heineman and Johnson "eliminate your mortgage" is described in their website at www.ccresource.net. [FN1]

> FN1. A step-by-step outline guides homeowners through this debt-elimination process. At defendants' request, this order finds this outline and other material posted on plaintiffs' website to be proper matter for judicial notice.

The process begins when the homeowner creates an online account with Capital Creation Resource (CCR), owned and operated by plaintiffs. With a username and password, the homeowner accesses plaintiffs' website and completes an online application. The website also requests that the homeowner prepare and sign a promissory note as well as a loan agreement for the encumbered property. The homeowner then sends these documents to plaintiffs with a cashier's check "of $3,000 [to eliminate a] 1st mortgage, and $1,500 [to eliminate] a second mortgage or home equity line of credit." Once this initial fee is received, Heineman and Johnson set up a Family Estate Amenable Complex trust in the homeowner's nan i.e., the Frances Kenny Family Trust. Heineman and Johnson name themselves the trustees. Title to the homeowner's property is transferred to the trust.

Now in charge as trustees, Heineman and Johnson approach the bank or lending institution that lent the homeowner the money to purchase the property. They make a "Presentment" to the bank in the form of "a cash-backed bond in double-amount of the promissory note." The "bond" is allegedly "a valid, rated instrument backed by a $120 Million Letter of Credit against the Assets of an 85-year old, $800

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 2
(Cite as: 2005 WL 106792, *1 (N.D.Cal.))

Million Swiss Trust Company." This is essentially an offer to the lender to satisfy the borrower's indebtedness. The alleged "bond," however, is a ploy. The website explains to the homeowner that:

> *2 The bank can keep the bond as payment based upon the following certain condition: The Lender must validate the debt. In other words, the Lender must PROVE a legitimate and valid loan was given.
> If the Lender accepts the bond and cashes it without providing the necessary documentation regarding the validity of the loan, the Lender agrees that the Client/Trust has been damaged 10 times the amount of the bond. Cashing and acceptance of the bond is acceptance of these conditions. (Remember, the Lender really never loaned you anything).

In addition to the "bond," Heineman and Johnson hire "Trustee lawyers" to "begin the legal process by sending out a legal complaint in the form of a CPA Report that outlines 40 or more different federal laws that have been violated in the 'lending process.' " The lending institution thereafter has a certain time frame within which to respond to the complaint. Purportedly, the homeowner will be notified by plaintiffs' legal team when the loan is "satisfied." The homeowner's "lender may or may not let [you] know or acknowledge this."

Once the loan is satisfied, "re-financing begins." The homeowner is told to "refinance [his] property at the maximum loan to value ratio possible" with a new lender. The alleged "purpose of this new re-financing is for you, the client, to compensate the Provider and CCR." Heineman and Johnson are the "Provider." They run CCR. The proceeds from this new loan are disbursed as follows: "The Provider receives 50%. CCR receives 25%. You, the client, receives the other 25%." This entire process takes "5-7 months in most cases." And, "[t]he end result is that the [homeowner] gets free and clear title to the home and a good amount of cash in hand."

Plaintiffs, however, perpetrate a fraud to "satisfy" the original indebtedness. [FN2] One of the documents Heineman and Johnson present to the bank or lending institution is entitled a "power of attorney." This document demands that the lender sign and thereby acknowledge that it has given the homeowner "vapor money" in exchange for an interest (via a deed of trust) in the subject property at the time of financing. A provision of this "power of attorney" provides that the lender's "silence is deemed consent." When the lender fails to respond, plaintiffs execute the power of attorney. They then sign a deed of reconveyance reconveying the lender's security interest in the property to Heineman and Johnson. The forged power of attorney and the deed of reconveyance are duly recorded at the county recorder's office. The county's records thus show a power of attorney from the lender granting Heineman and Johnson the right to sign the deed of reconveyance and the reconveyance from the original lender. The title seems clear and unencumbered. The lender is unaware of the maneuver.

> FN2. These additional details were brought to the Court's attention at a recent hearing by Ronald M. Arlas, co-counsel for defendant Greenpoint Mortgage Funding Inc. At the Court's request, Mr. Arlas thereafter submitted a declaration and documentation to support the allegations made at the hearing. The Court does not rely on these materials for the purpose of assessing attorney's fees and costs. These matters, however, are relevant to demonstrate the broader (likely fraudulent) reaches of plaintiffs' conduct.

Plaintiffs then turn around and from an unsuspecting new lender seek a loan to refinance the property. When the new lender conducts a preliminary title search, it discovers the power of attorney and deed of reconveyance, both of which appear to have been validly executed. From the new lender's point of view, the property appears to be unencumbered. And it is thus willing to refinance the property. Assuming that a refinancing loan of $200,000 is obtained, the proceeds are disbursed according to plaintiffs' agreement with the borrower i.e., fifty percent to Heineman and Johnson, 25 percent to CCR and 25 percent to the borrower). Plaintiffs clear at least $150,000. The remaining $50,000 supposedly goes to the borrower, who, of course, has the obligation to repay all $200,000.

*3 At the conclusion of this process, the borrower is in even worse condition than when he or she first looked to plaintiffs for debt relief. Two lenders believe that they have valid security interests in the subject property. When the homeowner defaults on both loans, both lenders commence foreclosure proceedings. In response, Heineman and Johnson, as trustees, file a bankruptcy petition on behalf of the borrower or file suit alleging that no enforceable debt accrued from either lender because the loans

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                     Page 3
(Cite as: 2005 WL 106792, *3 (N.D.Cal.))

were funded through wire transfers rather than cash. Fifteen such lawsuits were filed in this district on such a "vapor money" theory. [FN3]

> FN3. *The Case Family Trust, et al. v. Ameriquest Mortgage Co., et al.*, No. C 04-04559; *The James J. Shyrock, Jr. Family Trust, et al. v. America's Wholesale Lender, et al* No. C 04-0448; *The Shavirovich Family Trust, et al. v. WMC Mortgage Co., et al.*, No. C 04-04486; *The Beard Family Trust, et al. v. Washington Mutual Bank, et al.*, No. C 04-04466; *The Pafundi Family Trust, et al. v. Wells Fargo Bank N.A., et al.*, No. C 04-04465; *The Mitchell Family Trust, et al. v. Keybank Nat'l Ass'n, et al.*, No. C 04-04285; *The Edward A. & Janice L. Costa Family Trust, et al. v. Capital Commerce Mortgage Co., et al.*, No. C 04-04246; *The Heineman Family Trust, et al. v. Freedom Mortgage Corp.*, ( No. C 04-04185; *The Elisia's Hope Trust, et al. v. Fieldstone Mortgage Co., et* No. C 04-04014; *The Komes Family Trust, et al. v. World Savings Bank, et* ( No. C 04-040 *The Margery Naomi Johnson Family Trust, et al. v. Homecoming Financial Network, Inc., et al.* No. C 04-04012; *The Williamson Family Trust, et al. v. CIT Group/Consumer Finance, Inc., et al.*, No. C 04-03898; *The Magoon Family Trust, et al. v. Greenpoint Mortgage Funding, et* No. C 04-03897; *The Raymond J. Gaudreau Family Trust, et al. v. Ameriquest Mortgage Co., et al.*, No. C 04-03776; an *The Frances Kenny Family Trust, et al. v. World Savings Bank FSB, et al.*, No. C 04-03724.

\* \* \*

This Court rejected plaintiffs' theory in *The Frances Kenny Family Trust, et al. v. World Savings Bank FSB, et al.* No. C 04-03724. This is the current procedural posture. Following the dismissal of the *Kenny* complaint under Rule 8 of the Federal Rules of Civil Procedure, an order was issued directing plaintiffs' counsel Thomas Spielbauer to show cause why he should not be sanctioned and referred to the State Bar of California. The Court set a briefing schedule and the matter was set for hearing. Mr. Spielbauer was sanctioned ten-thousand dollars. At the hearing, he tendered a check in that amount to defendant World Savings Bank FSB, who had brought the motion to dismiss. At the time, the Court decided not to refer Mr. Spielbauer to the State Bar. Counsel was further directed to dismiss the remaining "vapor money" cases. Mr. Spielbauer confirmed that he would do so. Eventually, each case would be dismissed.

However, prior to voluntarily dismissing five such cases, Mr. Spielbauer moved in each case to withdraw as plaintiffs' counsel. [FN4] Various defendants opposed the withdrawal request and made demands for attorney's fees and costs. A hearing was held. The main question is whether plaintiffs' voluntary dismissals stripped this Court of jurisdiction to make any further rulings, including rulings on counsel's motions to withdraw and the various requests for attorney's fees and costs. Additional briefing on these matters was requested and received.

> FN4. Motions to withdraw were filed in the following actions *The Edward A. & Janice L. Costa Family Trust, et al. v. Capital Commerce Mortgage Co., et* ( No. C 04-042 *The Elisia's Hope Trust, et al. v. Fieldstone Mortgage Co., et al.* No. C 04-04014 *The Komes Family Trust, et al. v. World Savings Bank, et al.* No. C 04-04013; *The Williamson Family Trust, et al. v. CIT Group/Consumer Finance, Inc., et al.*, No. C 04-03898; *The Magoon Family Trust, et al. v. Greenpoint Mortgage Funding, et* No. C 04-03897; anc *The Frances Kenny Family Trust, et al. v. World Savings Bank FSB, et a* No. C 04-03724.

ANALYSIS

A plaintiff's right to dismiss under Rule 41(a)(1)(i) of the Federal Rules of Civil Procedure is absolute before a defendant serves an answer or files a motion for summary judgme *American Soccer Co., Inc. v. Score First Enterprises* 187 F.3d 1108, 1110-12 (9th Cir.1999). Even where a defendant has filed a motion to dismiss, a plaintiff may terminate the action voluntarily by filing a notice of dismissal under Rule 41(a)(1 *Concha v. Lona* 62 F.3d 1493, 1506-07 (9th Cir.1995). Hence, "a dismissal under Rule 41(a)(1) is effective on filing, no court order is required, the parties are left as though no action had been brought, the defendant can't complain, and the district court lacks jurisdiction to do anything about i *Commercial Space Mgmt. Co., Inc. v. Boeing Co., Inc.* 193 F.3d 1074, 1078 (9th Cir.1999).

*4 In light of the foregoing, there can be no dispute that once the voluntary dismissals were filed, Mr. Spielbauer's motions to withdraw were rendered moot. This order thus denies those motions on that basis. The Court, however, does not agree that the same result must apply to the various requests for attorney's fees and costs.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
(Cite as: 2005 WL 106792, *4 (N.D.Cal.))

Page 4

A district court has the inherent power to assess attorney's fees against a party who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 258-59, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) (internal quotations omitted). In this regard, if a court finds "that fraud has been practiced upon it, or that the very temple of justice has been defiled," it may assess attorney's fees against the responsible party. *Universal Oil Products Co. v. Root Refining Co.* 328 U.S. 575, 580, 66 S.Ct. 1176, 90 L.Ed. 1447 (1946). In such instances, the imposition of sanctions "transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of 'vindicat[ing] judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy." ' *Chambers v. Nasco* 501 U.S. 32, 46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (quo *Universal Oil,* 328 U.S. at 580).

The Court here has seen the scam at work. Greater bad faith would be hard to imagine. Plaintiffs and their counsel have employed a smokescreen to burden various lending institutions and impose upon them litigation costs in hopes of extracting settlements. The complaint fil Kenn is exemplary of plaintiffs' oppressive litigation tactics. In a 35-page, 221-paragraph complaint, plaintiffs made the following baseless allegations:

. World Savings "placed the promissory note into a temporary depository account in Frances Kenny's name and recorded the note as an asset ... thereafter removed this asset into a transactional account ... and issued credits from that account which constituted the draft which was issued" (Compl. ¶ 41).
. World Savings "removed the corpus of this deposit from Frances Kenny's temporary depository account without the knowledge nor consent of Frances Kenny" (*id.* ¶ 42).
. The note and deed of trust executed by Kenny on July 18, 2002 were "uncertified security instruments" (*id.* ¶ 44).
. World Savings "converted Frances Kenny's promissory note into a negotiable instrument without compensation to Frances Kenny*id.* ¶ 46).
. World Savings "converted the promissory note of which the deed of trust was security into a self funding note" (*id.* ¶ 47).
. World Savings "took this note, monetized it, and then recorded it as an asset on its accounting books" (*id.* ¶ 48).
. World Savings "utilized this note as a money reserve and engaged in other loans o *non-existent (vapor) money* based on the recorded asset value of this promissory note*id.* ' 49) (emphasis added).
**\*5** . World Savings "converted the equity value of Frances Kenny's interest in the promissory note into an exchange of credits" (*id.* ¶ 50).
. "This exchange of credits did not transfer entitlement rights nor meet the standard of a sale for such rights under the Uniform Commercial Code nor under any other standard of commercial law" (*id.* ¶ 51).
. World Savings "did this under the auspices of fractional reserve banking" (*id.* ¶ 52).
. The "sale of servicing rights is not equal to the legal rights in the assets" (*id.* ¶ 55).
. "By World Savings Bank FSB's act of conversion of Frances Kenny's promissory note, Frances Kenny and Defendant World Savings Bank FSB simply exchanged negotiable instruments" (*id.* ¶ 56).
. By "converting the promissory note," Kenny and World Savings "simply exchanged book entry securities credits" (*id.* ¶ 57).
. World Savings misrepresented to Kenny that this book entry securities exchange was instead a debt owed by Kenny to World Savings *id.* ¶ 58).
. World Savings failed to disclose to Kenny "the asset entries on the bank accounting ledger" *id.* ¶ 59).
. World Savings did not disclose to Kenny "that it would convert the promissory note into a monetized negotiable instrument upon which it would 'lend' as available money to other 'borrowers' over ten (10) times the amount of Frances Kenny's promissory note" (*id.* ¶ 60).
. Although plaintiffs acknowledge making monthly payments to World Savings, Kenny "does not owe this money" to World Savings *id.* ¶ 63-65).

These contentions have no basis in fact. They are disjointed, vague and incomprehensible. Fourteen separate complaints containing nearly identical allegations were filed in this district.

Moreover, plaintiffs' "vapor money" theory has no basis in law. It has been squarely addressed and rejected by various courts throughout the country for over twenty years *See, e.g., Nixon v. Individual*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
(Cite as: 2005 WL 106792, *5 (N.D.Cal.))

Page 5

*Head of St. Joseph Mortg. C* 615 F.Supp. 898 (C.D.Ind.1985); *Theil v. First Federal Sav. & Loan Ass'n of Marion,* 646 F.Supp. 592 (N.D.Ind.1986); *In re Stickland,* 179 B.R. 979 (Bankr.N.D.Ga.1995); *Rene v. Citibank* 32 F.Supp.2d 539 (E.D.N.Y.1999); *Hinz v. Washington Mut. Home Loans,* 2004 WL 729239 (D.Minn.2004). Plaintiffs' counsel completely neglected to bring these authorities to the attention of the Court. It is this kind of abuse of the judicial process (again, which the Court has seen first hand) that justifies an award of attorney's fees against plaintiffs and their counsel.

In a similar vein, the Court has the authority to award costs incurred. Despite plaintiffs' voluntary dismissals, a district court retains jurisdiction to consider collateral matters such as requests for costs. *Cooter & Gell v. Hartmarx Corp* 496 U.S. 384, 395-96, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) (recognizing generally that "federal courts may consider collateral issues after an action is no longer pending," including motions for costs) *Sequa Corp. v. Cooper,* 245 F.3d 1036, 1037-38 (8th Cir.2001) (noting that voluntary dismissal without prejudice under Rule 41(a)(1)(i) does not deprive a district court of its authority to award costs).

*6 Against this backdrop, this order turns to the various applications for attorney's fees and costs. In most instances, counsel submitted their fee requests through lodestar calculations, having multiplied the number of hours spent defending this litigation by the hourly rate of each attorney who performed services. In the Court's view, some of these requests were inflated or presented insufficient specificity to support the requested amount. [FN5] As such, reductions have been made where necessary. The following chart sets forth the respective awards to each attorney in each applicable case, which plaintiffs and their counsel (jointly and severally) are hereby ordered to pay within thirty days:

> FN5. By way of example, attorney Karen A. Braje made a fee request of $29,795.18 as counsel for defendant CIT Group/Consumer Finance, Inc., in *The Williamson Family Trust, et al. v. CIT Group/Consumer Finance, Inc., et al* No. C 04-0389. She also requested fees of $34,026.50 as counsel for defendant Ocwen Federal Bank FSB *The Elisia's Hope Trust, et al. v Fieldstone Mortgage Co., et al.* No. C 04-04014. Although counsel filed motions to dismiss for each client, the motions were largely duplicative in style and substance. This order thus finds the fee requests excessive and reduces them to so reflect.

| ATTORNEY | Case | Attorney's Fees | Costs | Total |
|---|---|---|---|---|
| Richard Darwin | 04-03776 | $7,000.00 | | $7,000.00 |
| Brian Cella | 04-03897 | $10,000.00 | $245.36 | $10,245.36 |
| Sunny S. Huo | 04-03897 | $10,000.00 | $174.27 | $10,174.27 |
| | 04-04246 | $5,000.00 | $886.93 | $5,886.93 |
| Ronald M. Arlas | 04-03897 | $4,000.00 | | $4,000.00 |
| Julie M. Wei & | 04-03898 | $10,000.00 | | $10,000.00 |
| Paul E. Rice | 04-04014 | $10,000.00 | | $10,000.00 |
| Karen A. Braje | 04-03898 | $10,000.00 | | $10,000.00 |
| | 04-04014 | $10,000.00 | | $10,000.00 |

\* \* \*

Given the serious and disturbing nature of the allegations set forth above, including the possibility of mail and wire fraud to further an Internet scam upon distressed and vulnerable citizens about to lose their homes, not to mention the lenders, the Clerk shall send a copy of this order to Kevin V. Ryan, United States Attorney for the Northern District of California, 450 Golden Gate Avenue, Box 36055, San Francisco, California 94102. The Court makes no recommendation as to how the United States Attorney should deal with the instant matter.

This matter is further referred to the State Bar of California. Accompanying his requests to withdraw, Mr. Spielbauer submitted a declaration under seal explaining that he brought these "vapor money"

Slip Copy
(Cite as: 2005 WL 106792, *6 (N.D.Cal.))

Page 6

cases in good faith and in no way participated in the possibly fraudulent conduct discussed above. The declaration has been considered in full. The Court still questions whether any member of the State Bar in good standing, and especially a former deputy public defender like Mr. Spielbauer, could have agreed to represent litigants like Heineman and Johnson and filed as many cases on their behalf as was done here. The Clerk shall send a copy of this order to: Intake Unit, The State Bar of California, 1149 South Hill Street, Los Angeles, California 90015. Again, the Court makes no recommendation as to how the State Bar should address the issue.

## CONCLUSION

In light of the foregoing, this order DENIES Mr. Spielbauer's motions to withdraw as MOOT. Within thirty days of this order, plaintiffs Scott Heineman and Kurt Johnson and plaintiffs' counsel Thomas Spielbauer (jointly and severally) shall pay the attorney's fees and costs set forth above. The Clerk shall send a copy of this order to the United States Attorney and the California State Bar. The Clerk shall further file this order in the following cases: No. C 04-03724; No. C 04-03776; No. C 04-03897; No. C 04-03898; No. C 04-04013; No. C 04-04014; and No. C 04-04246. As this order resolves the various motions for attorney's fees and costs, the hearings thereon are hereby VACATED.

*7 IT IS SO ORDERED.

2005 WL 106792 (N.D.Cal.)

Motions, Pleadings and Filings (Back to top)

· 3:04CV03724 (Docket) (Sep. 03, 2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.